NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DANIEL RICHARD MORRISON, *Petitioner/Appellant*,

*v.*

HEATHER MARIE MORRISON, *Respondent/Appellee*.

No. 1 CA-CV 21-0035 FC
FILED 10-14-2021

Appeal from the Superior Court in Maricopa County
No. FC2019-003019
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Kristi A. Reardon
*Counsel for Petitioner/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Christina S. Hamilton
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1 Daniel Richard Morrison ("Father") appeals from the superior court's ruling and the decree of dissolution awarding $8,000 in monthly child support to Heather Marie Morrison ("Mother"). For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 Mother and Father married in 2009 and signed a prenuptial agreement that divided the parties' property and awarded Mother a spousal maintenance amount that depended upon the length of the parties' marriage in the event of dissolution. Mother and Father had four children together and, throughout the marriage, Mother was unemployed while Father supported the family as a technology entrepreneur.

¶3 After ten years of marriage, Father filed for divorce. Under the terms of the prenuptial agreement, Mother received a lump sum spousal maintenance amount of $750,000, in addition to $500,000 for the purchase of a home. Though Father entered the marriage with about $28 million in assets, at the time of the dissolution proceedings he claimed that he had just over $2 million in assets remaining. Father further alleged he had not been employed with a regular income since 2009, and he had been drawing from his savings account to pay the family's expenses.

¶4 The parties agreed to equal parenting time. A hearing was held to determine the amount of child support to be awarded to Mother. Both parties hired expert witnesses to testify regarding the parties' gross incomes and the family's expenses to be used in the court's computation of child support. Mother's expert testified that Mother required $9,140 in child support. Father's expert argued the children's expenses were only $2,700 per month, which should be split equally between the two households.

¶5 Under the Arizona Child Support Guidelines, Arizona Revised Statutes ("A.R.S.") section 25-320 app. (2018) ("Guidelines"), the

court determined Mother would be entitled to $1,494 in monthly child support. Finding the Guideline amount to be inappropriate in this case, the court deviated upward and awarded Mother $8,000 in monthly child support. A decree of dissolution of marriage reflecting this ruling was subsequently entered.

¶6          Father timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶7          Father argues the court erred in deviating from the Guidelines. We generally review child support awards for an abuse of discretion. *Kelsey v. Kelsey*, 186 Ariz. 49, 53 (App. 1996). An abuse of discretion occurs when the superior court commits an error of law, or when the record, viewed in the light most favorable to upholding the court's conclusions, is devoid of competent evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009). "We accept the trial court's findings of fact unless they are clearly erroneous, but draw our own legal conclusions from facts found or implied in the judgment." *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002) (internal quotation marks and citation omitted). We review de novo the superior court's interpretation of the Guidelines. *Clay v. Clay*, 208 Ariz. 200, 202, ¶ 5 (App. 2004).

I.     The Superior Court Made Sufficient Written Findings When It Deviated from the Guidelines

¶8          Father first contends the superior court erred when it failed to make written findings on each factor in A.R.S. § 25-320(D) before it deviated from the amount recommended under the Guidelines. The Guidelines state:

> The court <u>shall</u> deviate from the guidelines, i.e., order child support in an amount different from that which is provided pursuant to these guidelines, *after considering all relevant factors, including those set forth in Arizona Revised Statutes Section 25-320*, and applicable case law, only if <u>all</u> of the following criteria are met:
>
> 1. Application of the guidelines is inappropriate or unjust in the particular case,
>
> 2. The court has considered the best interests of the child in determining the amount of a deviation. A deviation that

reduces the amount of child support paid is not, by itself, contrary to the best interests of the child,

3. The court makes written findings regarding 1. and 2. above in the Child Support Order, Minute Entry or Child Support Worksheet,

4. The court shows what the order would have been without the deviation, and

5. The court shows what the order is after deviating.

A.R.S. § 25-320 app. § 20(A) (emphasis in italics added). Section 25-320(D) identifies the following factors:

1. The financial resources and needs of the child.

2. The financial resources and needs of the custodial parent.

3. The standard of living the child would have enjoyed if the child lived in an intact home with both parents to the extent it is economically feasible considering the resources of each parent and each parent's need to maintain a home and to provide support for the child when the child is with that parent.

4. The physical and emotional condition of the child, and the child's educational needs.

5. The financial resources and needs of the noncustodial parent.

6. The medical support plan for the child. The plan should include the child's medical support needs, the availability of medical insurance or services provided by the Arizona health care cost containment system and whether a cash medical support order is necessary.

7. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

8. The duration of parenting time and related expenses.

¶9         Here, the court did not make express written findings as to each § 25-320(D) factor.  However, it was not required to do so.  The Guidelines require the court only *consider* these factors when deviating from the Guidelines.  *See* A.R.S. § 25-320 app. § 20(A); *see also* A.R.S. § 25-320(D); *Elliott v. Elliott*, 165 Ariz. 128, 131 n.1 (App. 1990).  The superior court noted that it considered the "child support guidelines, and the applicable case law, statutes and rules of court."  The court was presented with evidence related to the § 25-320(D) factors, and we presume the court considered a factor if the record contains such evidence.  *See Fuentes v. Fuentes*, 209 Ariz. 51, 55-56, ¶¶ 17-18 (App. 2004).

¶10        The Guidelines' requirement that the court make written findings pertains exclusively to (1) whether application of the Guidelines is inappropriate or unjust; (2) whether deviation is in the best interests of the children; (3) what the child support order would be without deviation; and (4) the child support order after deviation.  A.R.S. § 25-320 app. § 20(A)(1)-(5).

¶11        In the ruling, the superior court noted that application of the Guidelines would be inappropriate or unjust and that deviation is in the children's best interests because the "family was living a very lavish lifestyle prior to the parties' separation and Mother will need additional financial resources to ensure that she can provide for the children in a manner closer to what the children previously enjoyed."  The court further found that "Father has the resources to provide Mother with the additional child support," and "Mother's economic future is not as bright as Father's and she will need to go to school to improve her vocational future."  The superior court also noted what the child support amount would have been without deviation ($1,494), and what the amount is after deviation ($8,000).  *See* A.R.S. § 25-320 app. § 20(A)(4), (5).  The superior court's findings complied with the Guidelines.

II.        The Child Support Award is Supported by the Evidence

¶12        Father next contends the deviated child support award is not supported by the evidence.

¶13        Father contends the court erred by relying on the parties' "lavish lifestyle," to determine that an upward deviation of child support was appropriate.  However, one of the factors for the court to consider in deviating from the Guidelines is "[t]he standard of living the child would have enjoyed if the child lived in an intact home with both parents to the extent it is economically feasible considering the resources of each parent

and each parent's need to maintain a home and to provide support for the child when the child is with that parent." A.R.S. § 25-320(D)(3). It was appropriate for the court to consider the parties' lifestyle before the dissolution proceedings when determining whether to deviate from the Guidelines.

¶14 Father also contends he and Mother chose not to overindulge their children, and that the child support award gives the children a higher standard of living than they previously enjoyed. However, there was evidence that the family lived in a multi-million-dollar home, took luxurious vacations, and that they historically spent about $63,000 a month on expenses, which included expensive toys, food, entertainment, activities, and the children's clothing.

¶15 Mother's expert testified Mother required $9,140 per month to support the children. Father argues that expert's report contains multiple errors and disputes the expert's conclusion that Mother requires $2,540 in household expenses, $1,515.50 in childcare expenses, and $427 in medical expenses. But the court did not adopt Mother's expert's child support recommendation amount dollar for dollar. Father's claim that the court awarded Mother these amounts and that such an award was unwarranted is speculative at best.

¶16 First, Father contends the amount of household expenses should be reduced by half, to $1,270, because Mother only has the children for half of the month. Assuming arguendo that the court gave Mother a credit for household expenses as recommended by her expert, Mother's expert testified that in calculating Mother's expected expenses, she accounted for the equal parenting time plan. And certain household expenses like cable subscriptions, home maintenance, etc., were not dependent upon the amount of time Mother had the children; these expenses stay the same no matter how often Mother has the children. The expert reduced these expenses by one-fifth to account for Mother's share, which Father is not responsible to pay, but the remaining four-fifths accounts for the expense attributed to each of the children. *See Nash v. Nash*, 232 Ariz. 473, 480, ¶ 25 (App. 2013) (finding that expenses associated with households must be considered in marriages involving significant wealth, to allow the "children who have enjoyed such benefits to continue to receive them after the dissolution."). We find no error.

¶17 Father argues that Mother's award should be reduced by another $1,515.50 per month, because this is the amount the expert testified Mother required in nanny expenses and Mother does not currently have a

nanny, nor does she need one because she is unemployed. Even if the court awarded Mother childcare expenses, Mother testified that she would need a nanny to provide childcare because she will now have to work full time, and the parties had always used a nanny in the past. While it was true that Mother did not have a nanny at the time of the dissolution proceedings, the Guidelines allow the superior court to attribute hypothetical income and childcare expenses when calculating child support. A.R.S. § 25-320 app. § 5(E) ("If income is attributed to the parent receiving child support, appropriate childcare expenses may also be attributed."); *see also Engel v. Landman*, 221 Ariz. 504, 510-11, ¶¶ 22, 24 (App. 2009). Here, the expert looked at the parties' prior childcare expenses and found the parties historically spent over $57,000 on nannies in a nineteen-month period. Taking into account the equal parenting time, this equates to about $1,500 per month. This childcare expense is supported by the evidence.

**¶18**         Father argues the child support amount should be reduced by $427, because this is the amount attributed to medical expenses in the expert report, and Father has been ordered to pay one hundred percent of the children's insurance and medical and dental costs. Again, there is no evidence the court adopted this portion of Mother's expert's report in determining the reduced $8,000 child support amount. We find no error.

**¶19**         The superior court's child support award is supported by the evidence.

III.    The Superior Court Did Not Err in its Income Determinations

**¶20**         We review the superior court's determination that a particular source of funds should be considered as part of a parent's gross income for an abuse of discretion. *See Milinovich v. Womack*, 236 Ariz. 612, 615, 617, ¶¶ 7, 16 (App. 2015). We do not reweigh the evidence and "[w]e must give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Hurd*, 223 Ariz. at 52, ¶ 16.

        A.    Father's Income

**¶21**         Father argues the superior court erred when calculating his income. The superior court attributed about $120,000 in monthly income to Father based upon his affidavit of financial information, in which he reported an income of $1.4 million for 2019. Father argues he received this money from a one-time capital gain from the sale of his separate real estate property, and he used most of the funds to pay his spousal maintenance obligation under the premarital agreement. Father asserts the court erred in including this one-time sale in his income computation.

¶22        The Guidelines state that "[g]ross income includes income from any source," which may include "capital gains." A.R.S. § 25-320 app. § 5(A). The Guidelines further state that "[i]ncome from any source which is not continuing or recurring in nature need not *necessarily* be deemed gross income for child support purposes." *Id.* (emphasis added). While it is true the "Guidelines do not declare that every capital gain is gross income for child support purposes," it is within the discretion of the superior court to make this determination. *Burnette v. Bender*, 184 Ariz. 301, 304-05 (App. 1995), *superseded by statute on other grounds as recognized in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014). When making an income determination,

> [t]he crucial inquiry is whether the parent received "actual money or cash-like benefits . . . available for expenditures." In other words, the question is whether the parent acquired a source of funds for living and personal expenses, from which the children would have benefitted had their parents not divorced.

*Sherman v. Sherman*, 241 Ariz. 110, 114, ¶ 15 (App. 2016) (citation omitted). Here, Father received cash for the sale of the property, from which his children would have benefited. The superior court did not err in including this capital gain in Father's income.

¶23        Father contends that at the time of the dissolution proceedings he had no income aside from the one-time sale of the building. He argues the court should have instead attributed to him a salary of $40,000 per month, which was the amount of money he was drawing from his savings account to support the family. The superior court is in the best position to weigh the evidence and judge the credibility of the parties. *See Hurd*, 223 Ariz. at 52, ¶ 16. The court heard evidence that the family spent significantly more than $40,000 in monthly expenses, and considering Father was a successful technology entrepreneur who previously owned and then sold his own business, the court did not err in discounting Father's contention that he had "no employment or other income." We find no error.

        B.        Mother's Income

¶24        Finally, Father argues the court erred when calculating Mother's income by failing to "include spousal maintenance and minimum wage earnings."

¶25        Mother received a lump sum of spousal maintenance in the amount of $750,000. The superior court may consider spousal maintenance

when calculating gross income.  *See* A.R.S. § 25-320 app. § (5)(A).  Further, though not obligated to do so, the superior court may also consider income that "is not continuing or recurring in nature." *Id.*  At a minimum, the court is generally required to attribute minimum wage to an unemployed parent. *Id.* § 5(E).

¶26   Father argues the court was required to attribute to Mother $75,000 a year to account for the lump sum spousal maintenance award, in addition to minimum wage, for a total yearly income of $99,960.  Father cites no legal support for the proposition that the superior court must attribute a lump sum of spousal maintenance in this manner, and that the court must also combine spousal maintenance and minimum wage when calculating a parent's income.  The superior court is given discretion in its income determinations, and the Guidelines do "not specify or limit the items that the court may consider in determining a parent's financial resources." *Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (internal quotation marks omitted).  But even if Mother had been attributed $99,960 in income, the change in Mother's proportionate share of responsibility for the total child support amount would be so insignificant given the disparity in income between the parties that any reduction in Father's child support obligation per the Guidelines would be de minimis.  Moreover, the court's deviated child support order was based on the court's finding that Mother would need $8,000 per month to support the children.  Evidence in the record supports the court's finding.  (*See* ¶¶ 12-15 *supra*).

¶27   Additionally, Mother was unemployed, and the court attributed a salary of $40,750 per year, which exceeds a minimum wage salary of $24,960.  There was no evidence that Mother had any other source of funds at her disposal besides the spousal maintenance award.  Thus, it appears the superior court considered Mother's spousal maintenance as an additional source of income.  The superior court was required, at a minimum, to attribute minimum wage to Mother, and it did.  The court did not abuse its discretion.

**CONCLUSION**

**¶28** For the foregoing reasons, we affirm. Both parties request their attorneys' fees and costs on appeal. In the exercise of our discretion, and after considering the reasonableness of the parties' positions and their financial resources, we decline to award attorneys' fees. We award Mother her costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:     AA